Slip Op. 14-61

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **BORUSAN MANNESMANN BORU SANAYI VE TICARET A. Ş.,**<br><br>                              Plaintiff,<br><br>                      v.<br><br>**UNITED STATES,**<br><br>                              Defendant. | Before: Claire R. Kelly, Judge<br>Court No. 14-00129 |

## OPINION

[The Court *sua sponte* dismisses the action for lack of subject matter jurisdiction.]

Dated: June 6, 2014

  Donald Bertrand Cameron, Brady Warfield Mills, Julie Clark Medoza, Mary Shannon Hodgins, Rudi Will Planert, and Sarah Suzanne Sprinkle, Morris, Manning, & Martin, LLP, of Washington, DC for Plaintiff.

  Loren Misha Preheim, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant.

  Alan Hayden Price, Adam Milan Teslik, Robert Edward DeFrancesco, III, and Usha Neelakantan, Wiley Rein, LLP, of Washington, DC for Defendant-Intervenor.

  **Kelly, Judge:**  Plaintiff Borusan Mannesmann Boru Sanayi ve Ticaret A.Ş. ("Plaintiff" or "Borusan") brings this action for a writ of mandamus compelling the U.S. Department of Commerce ("Commerce") to perform a verification in the ongoing countervailing duty investigation of Certain Oil Country Tubular Goods From India and Turkey, 78 Fed. Reg. 45,502 (Dep't Commerce July 29, 2013) (initiation of countervailing duty investigations) ("Investigation"), prior to Commerce's issuance of the final

determination. Plaintiff alleges jurisdiction under 28 U.S.C. § 1581(i)(2) and (4) (2006),[1] claiming the remedy provided for under the Court's 28 U.S.C. § 1581(c) jurisdiction is manifestly inadequate. The court, *sua sponte*, dismisses this action for lack of subject matter jurisdiction.

## Background[2]

Plaintiff is a producer, exporter and importer of oil country tubular goods ("OCTG") from Turkey and is a mandatory respondent in the Investigation. In the proceedings, Commerce received questionnaire responses from both Plaintiff and the Government of Turkey ("GOT"). Commerce issued a negative preliminary determination in the Investigation on December 23, 2013. Certain Oil Country Tubular Goods From the Republic of Turkey, 78 Fed. Reg. 77,420 (Dep't Commerce Dec. 23, 2013) (preliminary negative countervailing duty determination and alignment of final determination with final antidumping determination) ("Preliminary Determination"). One of the alleged subsidy programs in the Investigation, at issue in this case, is the GOT's alleged provision of hot rolled steel ("HRS") to Plaintiff for less than adequate remuneration ("LTAR"). In the Preliminary Determination, Commerce found Plaintiff received *de minimis* subsidies. However, Commerce explained in a section of its Preliminary Determination titled "Programs and Issues That Require More Information" that it had initiated an investigation into whether two entities, Eregli Demir ve Celik Fabrikalari T.A.S. ("Erdemir") and

---

[1] Further citation to Title 28 of the U.S. code is to the 2006 edition.

[2] The court has raised the issue of jurisdiction *sua sponte* and for the purposes of this opinion will assume the factual allegations as alleged by Plaintiff in its complaint and briefs are true. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted).

Iskenderun Iron Steel Works Co. ("Isdemir"), had provided respondents with HRS and that it needed more information from the GOT about Ordu Yardimlasma Kurumu ("OYAK"), the Turkish military pension fund that was the majority shareholder of the two entities. Pl.'s Mot. Writ Mandamus, Ex. 2 at 20, May 30, 2014, ECF No. 6-2 (Decision Memorandum for the Negative Preliminary Determination in the Countervailing Duty Investigation of Certain Oil Country Tubular Goods from the Republic of Turkey). Thus, Commerce deferred review of the HRS for LTAR program for a post-preliminary analysis. In the post-preliminary analysis published on April 18, 2014, Commerce found subsidy margins for Plaintiff of 25.76% based solely on the HRS for LTAR program. Pl.'s Mot. Writ Mandamus Ex. 4 at 7–9 (Post-Preliminary Analysis). On April 22, 2014, in response to a verification request from the GOT, Commerce stated that its verifiers "will not be verifying the HRS for LTAR program."[3] Pl.'s Mot. Writ Mandamus, Ex. 7 at Exs. 1, 2 (Email Attachments to May 22, 2014 Letter from Veysel Parlak). On April 25, 2014, Commerce did conduct a one-day verification of the GOT, but its verification report did not verify the information on the HRS for LTAR program. Commerce later stated, on April 30, 2014, that as the program information was provided by the GOT and not by a

---

[3] The email also stated that

> [T]he purpose of a verification is to confirm the accuracy of information already submitted on the record. As such, the verifiers will not accept or examine any new information at verification. Nor is it the proper venue for a discussion of the Department's findings, for which the parties may submit case briefs and request a hearing later in the proceeding. Thus, our verifiers will also not discuss the Department's legal analysis and determinations in the post-preliminary analyses of the HRS for LTAR programs. Accordingly, we will not be verifying the HRS for LTAR program.

Pl.'s Mot. Writ Mandamus, Ex. 7 at Ex. 2.

company, "this [sort of information] is not something [Commerce] would verify as part of Borusan's company verification."[4]  Pl.'s Mot. Writ Mandamus, Ex. 5 (May 5, 2014 Memorandum to File from Shane Subler, International Trade Compliance Analyst).

Commerce's final determination is scheduled for publication on July 10, 2014.  Pl.'s Mot. Expedited Consideration 1, May 30, 2014, ECF No. 7.  Plaintiff brought this action on May 30, 2014, seeking expedited consideration and a writ of mandamus ordering Commerce to conduct verification of the information on the HRS for LTAR program.  See Compl., May 30, 2014, ECF No. 5; see also Pl.'s Mot. Expedited Consideration.  The court conducted a telephone conference that same day with both Plaintiff and Defendant.  During the telephone conference, the court informed the parties that it was concerned it did not possess jurisdiction to hear the case.  The court requested Plaintiff to address two specific issues: (1) why review under 28 U.S.C. § 1581(c) would not be adequate to remedy the alleged harm; and (2) whether there had been final agency action, which would be required under the Administrative Procedure Act ("APA").  Order, May 30, 2014, ECF No. 10.  The court asked the Plaintiff to address these two concerns in a memorandum addressed to the court no later than Tuesday, June 3, 2014, which the Plaintiff did.

## Discussion

As is often repeated, "federal courts . . . are courts of limited jurisdiction marked out by Congress."  Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356,

---

[4] From the record before the court, it is not entirely clear why Commerce did not verify this particular information submitted by the GOT.

358 (Fed. Cir. 1992) (quoting Aldinger v. Howard, 427 U.S. 1, 15 (1976), superseded by statute on other grounds, Judicial Improvements Act, Pub. L. No. 101-650, 104 Stat. 5089, as recognized in Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 557 (2005)).  Therefore, the "court may and should raise the question of its jurisdiction *sua sponte* at any time it appears in doubt."  Arctic Corner, Inc. v. United States, 845 F.2d 999, 1000 (Fed. Cir. 1988) (citations omitted).  The court may dismiss a case for lack of subject matter jurisdiction on its own motion because the court must enforce the limits of its jurisdiction.  See, e.g., Cabral v. United States, 317 Fed.Appx. 979, 980 n.1 (Fed. Cir. 2008) (citing Arctic Corner, Inc., 845 F.2d at 1000).

Under 28 U.S.C. § 1581(i), the Court has jurisdiction to hear "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for-- . . . (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," and "(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section."  However, § 1581(i) "shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable . . . by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 . . . ."  28 U.S.C. § 1581(i).  The legislative history of § 1581(i) demonstrates Congress intended "that any determination specified in section 516A of the Tariff Act of 1930, [as amended,] or any preliminary administrative action which, in the course of the proceeding, will be, directly or by implication, incorporated in or superceded by any such determination, is reviewable exclusively as provided in section 516A."  H.R.Rep. No. 96–1235, at 48 (1980), reprinted in 1980 U.S.C.C.A.N. 3729, 3759–60.  Thus, the Court's

§ 1581(i) jurisdiction is available only if the party asserting jurisdiction can show the Court's § 1581(a)–(h) jurisdiction is unavailable, unless the remedies afforded by those provisions would be manifestly inadequate. See Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987) ("Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." (citations omitted)).

When jurisdiction under another provision of § 1581 "is or could have been available, the party asserting § 1581(i) jurisdiction has the burden to show how that remedy would be manifestly inadequate." Id. at 963 (citations omitted). That judicial review may be delayed by requiring a party to wait for Commerce's final determination in a countervailing duty investigation is not enough to make judicial review under § 1581(c) manifestly inadequate. Gov't of People's Republic of China v. United States, 31 CIT 451, 461, 483 F. Supp. 2d 1274, 1282 (2007). Neither the burden of participating in the administrative proceeding nor the business uncertainty caused by such a proceeding is sufficient to constitute manifest inadequacy. See, e.g., id. at 461, 483 F. Supp. 2d at 1282 (citing FTC v. Standard Oil, 449 U.S. 232, 244, (1980)); Abitibi–Consolidated Inc. v. United States, 30 CIT 714, 717–18, 437 F.Supp.2d 1352, 1356–57 (2006). Essentially, the type of review sought by a plaintiff asserting the court's § 1581(i) jurisdiction must not already be provided for by 19 U.S.C. § 1516a (2006).[5] Abitibi–Consolidated Inc., 30 CIT at 717–18, 437 F.Supp.2d at 1356–57.

---

[5] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code, 2006 edition.

The Court's § 1581(c) jurisdiction makes final determinations by Commerce reviewable via 19 U.S.C. § 1516a(a)(2). The Court of Appeals for the Federal Circuit has held that § 1516a(a)(2) allows for judicial review of both matters of procedural correctness, as well as the substantive merits of the determination. See Miller & Co., 824 F.2d at 964 ("Under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a, the procedural correctness of a countervailing duty determination, as well as the merits, are subject to judicial review." (citations omitted)). That Commerce has conducted the administrative proceeding in a manner that is contrary to law is an allegation made expressly reviewable by 19 U.S.C. § 1516a(b)(1), which directs the court to "hold unlawful any determination, finding, or conclusion found-- . . . (B)(i) in an action brought under paragraph (2) of subsection (a) of this section, to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ."

Plaintiff alleges two counts in its complaint. First it claims Commerce unlawfully refused to verify certain information despite the requirement to verify established by 19 U.S.C. § 1677m(i) and that this refusal "will significantly impair Borusan's ability to meaningfully participate in the countervailing duty investigation with respect to this issue, in violation of the express procedural protections afforded it under the countervailing duty statute." Compl. 9 (citing NEC Corp. v. United States, 151 F.3d 1361, 1374 (Fed.Cir. 1998)). Second it claims Commerce's refusal "constitutes the unlawful prejudgment of this issue in violation of the requirement that administrative determinations under the antidumping and countervailing duty laws be conducted fairly and honestly." Compl. 9–10. Plaintiff asks the court, *inter alia*, to direct Commerce to conduct a verification of the information submitted by the GOT regarding the HRS for

LTAR program and to issue a report. Both of these counts claim that Commerce has acted contrary to law in conducting its investigation. Such a claim is properly and adequately reviewed in a 19 U.S.C. § 1516a case brought pursuant to 28 U.S.C. § 1581(c).

Review under 19 U.S.C. § 1516a does not foreclose the remedy Plaintiff seeks. Plaintiff asks the court to find that Commerce was acting contrary to law when it failed to verify certain information and that in doing so Commerce prejudged the matter. Plaintiff can make the identical claims in a case under 19 U.S.C. § 1516a once the determination is final. More importantly, Plaintiff, if successful, would get all the relief then that it could get now. In such a case, the court could find the determination to be contrary to law and/or not supported by substantial evidence and remand to the agency.

Plaintiff fails to explain why review under § 1581(c) is manifestly inadequate to remedy any harm it has, or will, suffer. In claiming that relief under 19 U.S.C. § 1516a is not adequate relief, Plaintiff states "such review is no substitute for having Commerce base its final determination in the first instance upon a full factual record and to render that determination in a fair and objective manner that is free from improper prejudgment on the part of the agency." Pl.'s Mot. Writ Mandamus 16. Whatever the foregoing statement is meant to convey, it does not explain why § 1581(c) is manifestly inadequate.[6]

---

[6] Throughout its papers, Plaintiff argues the court has § 1581(i) jurisdiction based on Commerce's prejudgment of its case by emphasizing the egregiousness of Commerce's alleged conduct in "baldly refusing to verify the factual information that forms the basis for its decision," Pl.'s Resp. to May 30, 2014 Court Order 4, June 3, 2014, ECF No. 12, which Plaintiff argues "amounts to deliberately blinding itself to any information that would undercut the findings and conclusions made in the *Post-Preliminary Analysis* concerning
(footnote continued)

The court understands that Plaintiff would prefer that if Commerce is to be told it is acting contrary to law that it be told so now, and not after a final determination is issued when Plaintiff will be required to make cash deposits. But such a desire does not make § 1516a manifestly inadequate because "paying deposits pending court review is an ordinary consequence of the statutory scheme." MacMillan Bloedel Ltd. v. United States, 16 CIT 331, 333 (1992).

Plaintiff incorrectly relies upon NEC Corp. v. United States, 151 F.3d 1361 (Fed. Cir. 1998) to argue that relief under 19 U.S.C. § 1516a is manifestly inadequate. See Pl.'s Resp. to May 30, 2014 Court Order 5–6; see also Pl.'s Mot. Writ Mandamus 10. Plaintiff tries to analogize to NEC where the court stated "'requiring NEC to appeal from the conclusion of an investigation that, allegedly, was preordained because of impermissible prejudgment is a classic example of a remedy that was 'manifestly inadequate.''" Pl.'s Resp. to May 30, 2014 Court Order 6 (quoting NEC Corp., 151 F.3d

---

the HRS for LTAR issue." Id. at 6. However, what matters for the purpose of this Court's jurisdiction is not the alleged egregiousness of Commerce's conduct but whether § 1581(c) can remedy any harm flowing from that conduct. Plaintiff repeatedly states as a conclusion that § 1581(c) is manifestly inadequate to relieve the harm of an allegedly incomplete record and an allegedly biased decision-maker, but at no point does it explain why. For example, Plaintiff argues "[w]aiting until the final determination to appeal under 1581(c) will not remedy this denial of Plaintiff's rights, because the prejudgment will have been finalized at that point. Plaintiff will have been denied the right to a fair and unbiased decision." Id. at 9. Further, Plaintiff claims "[a] post-hoc 'verification' of information after Commerce has already reached a pre-determined final determination would not accomplish the purpose of ensuring that Commerce renders its final determination in a fair and unbiased manner. This further indicates that the remedy under 1581(c) would be manifestly inadequate in this case." Id. at 10. These statements are mere conclusions; they do not explain how the judicial review provided for by § 1581(c) would be manifestly inadequate. No harm falls on Plaintiff by virtue of having to wait for the final determination to be issued in little more than 30 days from now. See Pl.'s Mot. Expedited Consideration 1 (providing that the final determination is scheduled to be issued July 10, 2014).

at 1368 (citations omitted)). The facts of NEC are very different from the facts here. In NEC the plaintiff sought an injunction to stop an investigation at its outset. The Court of International Trade found § 1581(c) would be manifestly inadequate to pursue such a claim because the investigation had not yet started.

> If Plaintiffs were to pursue administrative remedies and to proceed under 1581(c), they would be forced to participate in an investigation conducted by an allegedly biased decision maker who has allegedly prejudged the outcome of the case. This is a fool's errand, particularly when the judicial relief of disqualification can be granted at the outset of the investigation, rather than at the end, thus obviating the need to undo a complicated and time consuming administrative procedure, if Plaintiff should ultimately prevail.

NEC Corp. v. U.S. Dept. of Commerce, 20 CIT 1483, 1484, 967 F.Supp. 1305, 1306 (1996), aff'd, 151 F.3d 1361 (Fed. Cir. 1998). Here, whatever the merits of the process, it is nearly over. See Pl.'s Mot. Writ Mandamus 16 (providing that the final determination is due on July 10, 2014). No harm can be done now that cannot be remedied in § 1516(c) review.

Plaintiff admits that what it seeks in this action can be achieved in a § 1516(c) action but contends that it does not trust the process. Plaintiff states:

> Court review under 1581(c) of the record would by definition be incomplete and flawed and therefore, manifestly inadequate. Moreover, this failure to develop an adequate record would not be remediable in an action under 1581(c). Certainly, the record as it is presented for appeal will not include any findings for verification and while the court could require verification before its review of the record, it is by no means clear that this would be done. A post-hoc "verification" of information after Commerce has already reached a pre-determined final determination would not accomplish the purpose of ensuring that Commerce renders its final determination in a fair and unbiased manner. This further indicates that the remedy under 1581(c) would be manifestly inadequate in this case.

Pl.'s Resp. to May 30, 2014 Court Order 10. Plaintiff discounts the ability of a post-hoc verification upon remand to remedy the ills of an allegedly biased investigation. Plaintiff's preferred remedy is for the court to order what would essentially be a more immediate post-hoc verification in order to prevent an allegedly biased investigation from concluding. It wants at the eleventh hour what it deems inadequate at the twelfth hour. These are very different facts from NEC.[7]

---

[7] The cases that the Plaintiff cites as in accord with NEC are also inapposite in that they all allege a type of serious harm that would be avoided by virtue of bringing a § 1581(i) case. Pl.'s Resp. to May 30, 2014 Court Order 7–8. In Pac Fung Feather Co., Ltd. v. United States, the Court of International Trade found the requirement of seeking a Customs ruling letter under § 1581(h) was manifestly inadequate to challenge generally promulgated regulations as arbitrary, capricious and contrary to the statutory imperative contained in 19 U.S.C. § 3592(b) (1994). Pac Fung Feather Co., Ltd. v. United States, 19 CIT 1451, 1456–57, 911 F.Supp. 529, 534 (1995) aff'd, 111 F.3d 114 (Fed. Cir. 1997). The court reasoned that Customs would have no authority to deviate from its general regulations, and that plaintiffs' goods would clearly be subject to the new regulatory quantitative textile restrictions. Pac Fung Feather Co., Ltd., 19 CIT at 1456–57, 911 F.Supp. at 534. The court found that plaintiffs there were not challenging the type of as-applied ruling provided for by § 1581(h), but instead were challenging Customs' general regulatory scheme. Pac Fung Feather Co., Ltd., 19 CIT at 1456, 911 F.Supp. at 533–34. The court held that requiring an importer to obtain such a ruling would be futile. Pac Fung Feather Co., Ltd., 19 CIT at 1456–57, 911 F.Supp. at 534. Defendant's arguments, if successful, would have required the plaintiffs to take an additional and unnecessary step, as the outcome of the ruling letter was pre-determined and plaintiffs were not challenging Customs' application of its regulations to them specifically. That was not a case where plaintiffs were being asked to complete the very process that formed the basis of their claim. Thus, the Pac Fung plaintiffs, like the importer of NEC, were able to avoid an unnecessary administrative exercise that had not yet begun. Likewise in Hysla S.A. v. United States, the Court of International Trade found that there had been a demonstration of "grave economic harm which cannot be addressed pursuant to 1581(a-h)." Hysla S.A. v. United States, 22 CIT 44, 48 (1998). No such demonstration has been made here. In Associacao Dos Industriais de Cordoaria E Redes v. United States, plaintiffs alleged "substantial market disruption and travel expenses and inconvenience associated with coming before Commerce to defend against dumping allegations" as a result of

(footnote continued)

Plaintiff is correct that the Court has exercised residual jurisdiction under § 1581(i) to review Commerce's actions during the pendency of an investigation. All but three[8] of the cases cited by the Plaintiff present facts akin to the NEC facts, not the facts here. In Dofasco, as in NEC, the plaintiff sought to stop an administrative review before it had begun. Waiting until the review had been completed to determine if the review was initiated pursuant to a timely review request would have made any relief meaningless. Therefore the court found § 1581(c) was manifestly inadequate because the case was in line with those where "the review that the plaintiff seeks to prevent will have already occurred by the time relief under another provision of section 1581 is available." Dofasco Inc. v. United States, 28 CIT 262, 270, 326 F.Supp.2d 1340, 1346 (2004), aff'd, 390 F.3d 1370 (Fed. Cir. 2004). In Nissan, the plaintiffs alleged Commerce had inordinately delayed its completion of a past-due § 751 administrative review for 1980–1984,

---

petitioners filing and withdrawing multiple antidumping petitions. Associacao Dos Industriais de Cordoaria E Redes v. United States, 17 CIT 754, 755 (1993). Plaintiff here can point to no harm separate and apart from the actual Commerce determination that is yet to come and that can be remedied by review under 28 U.S.C. § 1581(c).

[8] None of these cases helps the Plaintiff. Sacilor, Acieries et Laminoirs De Lorraine involved enjoining the release of confidential information. Sacilor, Acieries et Laminoirs De Lorraine v. United States, 3 CIT 191, 191, 542 F.Supp. 1020, 1021 (1982). In MacMillan Bloedel, the plaintiff sought "a writ of mandamus directing the Department of Commerce to conduct an investigation to determine whether Macmillan Bloedel should be excluded from a countervailing duty order." MacMillan Bloedel, 16 CIT at 331. However, there the court dismissed plaintiff's action for lack of jurisdiction. See id. Plaintiff's MacMillan Bloedel citation includes a citation to Nakajima All Co. v. United States, 12 CIT 585, 691 F.Supp. 358 (1988), which granted mandamus directing Commerce to complete and publish final results of an administrative review by a specific date so that a delay in completing the proceedings would not extend beyond 6 years. See Nakajima, 12 CIT at 591–92, 691 F.Supp. at 363–64. However, in that case § 1581(c) jurisdiction was manifestly inadequate because the timeliness issue would have been moot if plaintiff were required to wait for the administrative proceeding to be completed. See MacMillan Bloedel, 16 CIT at 332 (discussing Nakajima).

preliminarily determining to revoke the dumping order, and sought to enjoin Commerce from initiating a potentially invalid subsequent review for the period of 1985–1986. <u>Nissan Motor Corp. v. United States</u>, 10 CIT 820, 821–22, 824, 651 F. Supp. 1450, 1453, 1455 (1986). The court held it had jurisdiction to hear the case under § 1581(i), because there was the possibility that Commerce would never complete the administrative review, thereby depriving plaintiffs of a means to prevent a potentially unnecessary administrative review. <u>Id.</u> at 822, 651 F. Supp. at 1454. In <u>Carnation</u>, plaintiffs alleged that Commerce lacked authority to conduct the two administrative reviews at issue and moved the court to enjoin the publication of any of Commerce's final results. <u>Carnation Enterprises v. U.S. Dep't of Commerce</u>, 13 CIT 604, 604–05, 719 F.Supp. 1084, 1085 (1989). Plaintiffs claimed the underlying order for those reviews was invalid. Plaintiffs withdrew from the pending administrative reviews and argued they should not be forced to participate in any current or future reviews in order to challenge the legality of those reviews. The court found §1581(i) jurisdiction because the remedy provided by a §1581(c) case would not alleviate the harm suffered by plaintiffs of having to participate in any allegedly illegal reviews. <u>Id.</u> at 611, 719 F.Supp. at 1090. The court further reasoned that "[s]ection 1581(i) enables the court to entertain actions pertaining to antidumping proceedings provided there is no challenge to a determination specified in 19 U.S.C. § 1516a." <u>Id.</u> at 612, 719 F.Supp. at 1090–91. These cases all sought to stop an allegedly unnecessary or ultra vires administrative proceeding before plaintiffs were burdened with them.

Here, Plaintiff is not claiming that it will be spared an illegal proceeding. It claims that the proceeding it has already endured was defective and it hopes to forestall the final determination which it fears will be wrong. Yet, the only harm Plaintiff could suffer

Court No. 14-00129 Page 14

is to have a determination rendered against it that is not supported by substantial evidence and/or contrary to law. It has a remedy for that harm.

Plaintiff's remedy is to continue participating in the administrative proceedings below until they are concluded in a little over one month from now. Plaintiff may, if it chooses, then appeal from Commerce's final determination and file suit in this Court under § 1581(c). Because the court finds that the remedy available to Plaintiff under § 1581(c) is not manifestly inadequate, the court will not address whether Commerce's alleged refusal to conduct verification could constitute final agency action as required by APA § 704, sufficient to form the basis of an APA claim that would be reviewable under the court's § 1581(i) jurisdiction.

## Conclusion

For the foregoing reasons, Plaintiff's Complaint is dismissed for lack of subject matter jurisdiction. Judgment will be entered accordingly.

      /s/ Claire R. Kelly
    Claire R. Kelly, Judge

Dated: June 6, 2014
      New York, New York